UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK CARPENTER,

        Plaintiff,                        Hon. Janet T. Neff

v.                                        Case No. 1:19-cv-534

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 28 years of age on his alleged disability onset date. (ECF No. 16-6, PageID.682, 697). He successfully completed high school and worked previously as an assembly line worker, quality control worker, and a loader/general laborer. (ECF No. 16-12, PageID.1093). Plaintiff applied for DIB benefits on July 29, 2010, alleging that he had been disabled since August 1, 2009, due to herniated discs, rheumatoid arthritis in his lower back, lumbar cysts, curvature of the spine, and shoulder surgery. (ECF No. 16-6, 16-7, PageID.682-85, 697, 725).

Following an administrative hearing, ALJ Paul Jones, in an opinion dated November 9, 2011, determined that Plaintiff did not qualify for disability benefits. (ECF No. 16-3, 16-4, PageID.441-519, 577-84). The Appeals Council remanded the matter for further administrative action. (ECF No. 16-4, PageID.589-93). Following another administrative hearing, ALJ Jones, in an opinion dated September 27, 2013, again concluded that Plaintiff did not qualify for disability benefits. (ECF No. 16-3, PageID.427-36, 520-58). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.417-22).

Plaintiff subsequently filed an application for SSI benefits and appealed to this Court the denial of his DIB application. (ECF No. 16-6, 20-1, PageID.682-85, 1611). The parties stipulated to remand Plaintiff's DIB appeal to the Commissioner for further consideration. (ECF No. 20-1, PageID.1611). ALJ Lawrence Blatnik thereafter combined Plaintiff's two applications and following another hearing

concluded, in an opinion dated March 23, 2016, that Plaintiff did not qualify for disability benefits. (ECF No. 16-12, PageID.1080-95, 1102-64). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2013. (ECF No. 16-12, PageID.1082). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age,

-4-

education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease and disc protrusion of the lumbar spine; (2) scoliosis; (3) degenerative changes of the left shoulder, status post-surgical repairs; (4) left index finger tip amputation; (5) depression; (6) an anxiety disorder; and (7) a personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 16-12, PageID.1083-89).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he can lift/carry 10 pounds occasionally and less than 10 pounds frequently; (2) during an 8-hour workday, he can sit at least 6 hours and stand/walk for 2 hours; (3) he requires the ability to change position alternating from sitting to standing, and standing to sitting, for 3-5 minutes every 20-30 minutes; (4) he can

occasionally reach with his left upper extremity; (5) he can frequently feel with his left, non-dominant hand; (6) he can occasionally balance with the use of a hand-held assistive device; and (7) he can perform simple, routine, and repetitive tasks. (*Id.*, PageID.1089-90).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 99,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 16-12, PageID.1150-55). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

I.  **Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that he is

entitled to relief on the ground that he satisfies Sections 1.02A and 1.04A of the Listings.

    A.    Section 1.02

Section 1.02A of the Listing applies to:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity. . .and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).   With:

    A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02.

Section 1.00(B)(2)(b) provides, in relevant part, as follows:

(1) Definition.   Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.   Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk

> a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).

The ALJ articulated three reasons in support of his conclusion that Plaintiff did not satisfy this Listing. First, the ALJ found that Plaintiff did not experience "gross anatomical deformity combined with chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints." (ECF No. 16-12, PageID.1088). The ALJ also found that the record did not contain "medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint." (*Id.*). Finally, the ALJ found that Plaintiff did not suffer from an inability to ambulate as defined by the Listing. (*Id.*, PageID.1088-89). Plaintiff argues that he satisfies this Listing based upon "his long term treatment for [a] herniated disc at L5-S1." A review of the evidence, however, reveals that the ALJ's decision is supported by substantial evidence.

X-rays of Plaintiff's lumbar spine, taken on January 12, 2010, were "unremarkable." (ECF No. 16-8, PageID.769). An MRI examination of Plaintiff's lumbar spine, performed on February 21, 2010, revealed: (1) a "small" disc protrusion and "mild" disc bulging at L5-S1; (2) "minor" disc bulging at other levels "without central canal stenosis"; and (3) "mild" degenerative changes. (*Id.*,

PageID.767-68).  The results of a March 10, 2010, physical examination were unremarkable.  (*Id.*, PageID.770-72).  Plaintiff exhibited no gait or strength abnormalities, "no laxity or subluxation of any joints," normal sensation, and negative straight leg raising.  (*Id.,* PageID.771).  Plaintiff subsequently treated with a chiropractor, received injection therapy, and participated in physical therapy after which Plaintiff reported a significant reduction in his subjective symptoms. (*Id.*, PageID.773-93).

On November 19, 2010, Plaintiff participated in a lumbar diskography examination the results of which revealed that his L4-L5 disc was "normal," but that his L5-S1 disc was "abnormal and under provocation reproduces an area of [Plaintiff's] pain."  (ECF No. 16-9, PageID.982).  The results of a December 20, 2010 examination revealed that Plaintiff's subjective complaints of lower back pain were "not compatible with an isolated disc herniation and cannot be explained on a neuroanatomical basis."  (ECF No. 16-8, PageID.885-87).  The results of a January 27, 2011, examination were likewise unremarkable.  (*Id.*, PageID.894-97).

On February 15, 2011, Plaintiff participated in an electromyography examination the results of which were "normal" with "no electrodiagnostic evidence for left or right lumbosacral radiculopathy or . . . neuropathy."  (*Id.*, PageID.902). An April 12, 2011, examination produced "mildly abnormal" results.  (*Id.*, PageID.900-01).  On October 25, 2011, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild" degenerative disc disease

with no nerve root displacement or spinal canal stenosis. (ECF No. 16-9, PageID.987).

The results of an April 28, 2014, physical examination were unremarkable, as Plaintiff exhibited "normal" strength and range of motion and no neurologic deficiency. (ECF No. 16-17, PageID.1457-59). On September 4, 2014, Plaintiff reported that he recently experienced sea-sickness "on the lake while salmon fishing." (*Id.*, PageID.1504). The results of a September 18, 2014 physical examination were unremarkable. (*Id.*, PageID.1454-56). On May 27, 2015, Plaintiff reported that he enjoys camping, pitching horseshoes, and "having parties." (*Id.*, PageID.1578). A June 13, 2015, examination revealed "decreased" range of motion and "tenderness" in his lumbar spine, but was otherwise unremarkable with no evidence of strength, motor, or sensory deficiency. (*Id.*, PageID.1582-84).

This evidence constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff does not satisfy Listing 1.02A. Accordingly, this argument is rejected.

    B.    Section 1.04

        Section 1.04 provides as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root . . . or the spinal cord. With:
>
>     A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of

> the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine),

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)). The ALJ found that Plaintiff failed to satisfy this Listing because his impairments and symptoms did not satisfy the requirements quoted above. (ECF No. 16-12, PageID.1088). As the evidence discussed above reveals, this conclusion is supported by substantial evidence. This argument is, therefore, rejected.

## II. Treating Physician Doctrine

On August 28, 2013, Dr. Edward Ball completed a report regarding Plaintiff's ability to perform physical activities. (ECF No. 16-9, PageID.1040-43). The ALJ afforded only "limited weight" to Dr. Ball's opinion. (ECF No. 16-12, PageID.1092). Plaintiff argues that he is entitled to relief because the ALJ failed to afford appropriate weight to the opinions of his treating physician.

-11-

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to Plaintiff's ability to lift/carry and stand/walk, Dr. Ball's opinion mirrored the ALJ's RFC findings. (ECF No. 16-9, PageID.1040). The doctor reported that Plaintiff could only occasionally perform reaching, handling, fingering, and feeling activities. (*Id.*, PageID.1042). The doctor failed, however, to

articulate any specific functional limitations regarding Plaintiff's ability to perform such functions. The doctor reported that Plaintiff's ability to sit was "affected by [his] impairment," but failed to articulate any specific functional limitations in this regard. (*Id.*, PageID.1041). With respect to Plaintiff's ability to push, pull, climb, balance, kneel, crouch, crawl, and stoop, the doctor again indicated that Plaintiff's abilities were limited but failed to articulate any specific functional limitations regarding such. (*Id.*).

The ALJ discounted Dr. Ball's opinion on the ground that such was inconsistent with the medical record, including the doctor's own treatment notes. (ECF No. 16-12, PageID.1092). The medical evidence discussed above regarding Plaintiff's lumbar spine, as well as the evidence regarding Plaintiff's shoulder impairment, (ECF No. 16-8, PageID.894-97, 910-15, 923, 928-35), supports the ALJ's decision to discount Dr. Ball's opinion. Furthermore, as already noted, Dr. Ball did not even articulate any specific functional limitations which are inconsistent with the ALJ's RFC finding. In sum, the ALJ's decision to afford only limited weight to Dr. Ball's opinion is supported by substantial evidence. Accordingly, this argument is rejected.

### III.   Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her

ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ concluded that Plaintiff can perform a limited range of sedentary work. Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence as the discussion of the evidence above indicates. Plaintiff's argument to the contrary is that the ALJ should have weighed the evidence differently which is not a basis for relief. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 5, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge